UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 4:10-cr-0397 |
| | § | |
| JOSE LUIS GONZALEZ SEGUNDO, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's motion to suppress prior deportations and motion to dismiss indictment (Doc. No. 15). Upon considering the motions, all responses thereto, the testimony and oral argument in hearings before the Court, and the applicable law, the Court finds that Defendant's motions must be granted.

## I.   FACTUAL BACKGROUND

Mr. Gonzalez Segundo is charged with one count of illegal reentry in violation of 8 U.S.C. §§ 1326(a), (b)(1). (Doc. No. 1.) This charge stems from Mr. Gonzalez Segundo's reentry into the United States after removal subsequent to a conviction for criminal possession of a controlled substance. Mr. Gonzalez Segundo is alleged to have re-entered the country without obtaining the consent of the Attorney General or Secretary of Homeland Security to reapply for admission into the United States. (*Id.*)

Mr. Gonzalez Segundo now seeks to suppress his prior removals and dismiss the Indictment on the ground that his prior removals were legally invalid. At a hearing on these motions on September 17, 2010, Mr. Gonzalez Segundo testified. The AUSA did not present witness testimony at this hearing, but offered to submit testimony from an Immigration and Customs Enforcement ("ICE") agent relating to ICE's general practice in expedited removal

1

proceedings, though not Mr. Gonzalez Segundo's expedited removal proceeding specifically.[1] (Transcript of September 17, 2010 hearing ("9/17/10 Tr.") at 29:24-30:3.) In addition, both Mr. Gonzalez Segundo's counsel and the AUSA submitted exhibits into evidence relating to Mr. Gonzalez Segundo's removal proceedings and his subsequent re-entry into the United States. Defendant's Exhibit A was Form I-851, Notice of Intent to Issue a Final Administrative Removal Order. Government's Exhibit 1 was a Record of Sworn Statement in Affidavit Form, which documented an interview of Mr. Segundo Gonzalez by an ICE officer on January 26, 2009. Government's Exhibit B was a Form I-213, Record of Deportable/Inadmissible Alien, which contained a record of ICE's encounter with Mr. Gonzalez Segundo on January 26, 2009. On October 21, 2010, the Court heard oral argument from counsel. The AUSA again offered to submit testimony from an ICE agent regarding ICE's normal course of practice, and Defendant's counsel waived any further evidentiary hearing. (Transcript of October 21, 2010 hearing at 4:21-25, 11:23-12:7.) The facts obtained from Mr. Gonzalez Segundo's testimony and the exhibits are as follows:

Mr. Gonzalez Segundo, born in Mexico, came to the United States at the age of six or seven years with his mother.[2] (9/17/10 Tr. at 4:12-5:5.) They settled in McAllen, Texas. (*Id.* at 5:6-9.) Mr. Gonzalez Segundo has lived in and around McAllen since his arrival in the United States, except for absences corresponding to his deportations. (*Id.* at 6:22-7:7.) He has five U.S. citizen children who were born in Texas and live around McAllen. (*Id.* at 7:8-17.)

---

[1] The Immigration and Naturalization Service ("INS"), an agency of the Department of Justice, was formally dissolved as of March 1, 2003. Its functions and authority were allocated primarily to the new Department of Homeland Security. Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. DHS's enforcement operations, including the identification, detention, and removal of noncitizens from the United States, are handled by U.S. Immigration and Customs Enforcement ("ICE"). Mr. Gonzalez Segundo's 2002 expedited removal was handled by the INS, while his subsequent encounters were with ICE officers.

[2] There appears to be some inconsistency between the year in which Mr. Gonzalez Segundo first came to the United States and his age at that time. Mr. Gonzalez Segundo testified that he came to the United States in 1968 or 1969 and that he was six or seven years old when he first arrived. (9/17/2001 Tr. at 3:10-17.) However, since Mr. Gonzalez Segundo was born in 1961, he would have been seven or eight years old if he had arrived in 1968 or 1969.

Mr. Gonzalez Segundo stopped regularly attending school in the third grade and began working alongside his mother picking fruit. (*Id.* at 5:10-6:4.) He attended school only sporadically thereafter and did not graduate from high school. (*Id.* at 6:5-10.) Mr. Gonzalez Segundo does not read or write English and understands minimal spoken English. (*Id.* at 6:11-12, 11:16-22, 23:21-25, 24:10-14.) With respect to Spanish, Mr. Gonzalez Segundo possesses some reading and writing ability. (*Id.* at 6:13-21.)

In 2001, Mr. Gonzalez Segundo was convicted of a count of possession of a controlled substance and sentenced to a term of imprisonment in the Texas Department of Criminal Justice ("TDCJ"). (*Id.* at 7:18-21; Def. Exh. 1 at 1.) Under Fifth Circuit law at the time, a conviction for felony drug possession was considered an "aggravated felony" under the Immigration and Nationality Act ("INA"). Mr. Gonzalez Segundo was placed into removal proceedings under INA § 238(b), which provides for the expedited removal of noncitizens convicted of aggravated felonies. (Def. Exh. 1 at 1.) Noncitizens placed into expedited removal proceedings pursuant to INA § 238(b) are issued a Form I-851, Notice of Intent to Issue a Final Administrative Order. This form consists of two pages. (Def. Exh. 1 at 1-2.) The first page possesses identifying information about the individual, factual allegations, notice of the charges against the individual, and a description of the individual's rights and responsibilities, including the right to be represented by counsel, the 10-day period in which the individual may rebut the charges against him, the right to petition for judicial review within 14 days after the final order of removal is entered, and the option to waive such appeal. (*Id.* at 1.) The second page consists of a certificate of service confirming that the Form I-851 was served upon the individual named on the first page, a signature line for the individual to acknowledge receipt of the form, a portion where an individual can indicate that he wishes to contest the charges against him, and a portion where the

3

individual can waive his rights to rebut and contest the charges, the right to petition for judicial review, and the 14-day period of execution of the final removal order. (*Id.* at 2.)

While serving his sentence for the 2001 conviction at a TDCJ facility, Mr. Gonzalez Segundo was interviewed by an INS officer. (9/17/10 Tr. at 9:1-10.) The INS officer spoke to Mr. Gonzalez Segundo in a hallway for approximately three to four minutes. (*Id.* at 9:11-24.) Mr. Gonzalez Segundo stated that the INS officer began speaking to him in English, but switched to Spanish after Mr. Gonzalez Segundo told him that he did not understand. (*Id.* at 23:21-25, 24:12-14.) The INS officer proceeded to speak to Mr. Gonzalez Segundo in a mixture of Spanish and English because the INS officer did not speak sufficient Spanish. (*Id.* at 23:23-24:18.) Mr. Gonzalez Segundo testified that the INS officer did not advise him of his right to have an attorney, did not ask him whether he wanted an attorney, and did not explain his right to appeal or ask if he wanted an to appeal. (*Id.* at 9:19-10:14.) Mr. Gonzalez Segundo testified that the INS officer showed him only the second page of Form I-851, but not the first page of this form. (*Id.* at 8:6-21.) He testified that the INS officer told him that, by signing the form and agreeing to deportation, he would be released quickly. (*Id.* at 10:2-3, 12:10-11, 12:21-25.) Mr. Gonzalez Segundo signed his name to the portion of page 2 of Form I-851 in which he waived his rights to rebut and contest the charges, to file a petition for review of the final removal order, and the 14-day execution period of the final removal order. (*Id.* at 8:12-13, 10:15-17.) He testified that he could not read the English-language text appearing next to the two checkboxes acknowledging the waiver of rights, nor did the INS officer translate this text into Spanish.[3] (*Id.* at 10:18-11:7.)

Mr. Gonzalez Segundo was issued a final administrative removal order on April 1, 2002. (Doc. No. 15, Exh. A.) He was subsequently deported from the United States on April 22, 2002.

---

[3] In addition, Mr. Gonzalez Segundo stated that he cannot read the English text on page 1 of Form I-851. Nor has he ever received a translation of the first page of Form I-851. (9/17/10 Tr. at 8:14-25.)

(9/17/10 Tr. at 16:15-17; Doc. No. 15, Exh. B.) Upon his reentry to the United States, Mr. Segundo encountered immigration officials and, on May 14, 2003, was issued a Form I-871, Notice of Intent/Decision to Reinstate Prior Order, that reinstated his April 1, 2002 removal order. (9/17/10 Tr. at 16:18-20; Doc. No. 15, Exh. B.) He was again deported. He reentered the United States in 2008 and was encountered by ICE officers in January 2009, leading to his present indictment for illegal reentry. (Govt. Exh. B.)

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b) allows the Court to hear at the pretrial stage any defense that may be determined without a trial of the general issue. A court should not dismiss an indictment if it alleges every element of the offense. *See United States v. Guzman-Ocampo*, 236 F.3d 233, 236 (5th Cir. 2000). However, indictments for illegal reentry under 8 U.S.C. § 1326 are subject to dismissal where the underlying deportation proceeding, which serves as an element of the criminal offense, was not conducted in conformity with due process and "effectively eliminate[d] the right of the alien to obtain judicial review" of the deportation proceeding. *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987).

The Fifth Circuit has interpreted the *Mendoza-Lopez* decision in order to formulate three requirements for a successful collateral attack upon a prior removal order in a prosecution for illegal reentry under 8 U.S.C. § 1326: (1) the prior hearing was "fundamentally unfair"; (2) the hearing effectively eliminated the right of the individual to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the individual "actual prejudice." *See United States v. Lopez-Vasquez*, 227 F.3d 476, 483 (5th Cir. 2000).

In 1996, Congress codified *Mendoza-Lopez* in 8 U.S.C. § 1326(d). Section 1326(d) mandates that, in addition to a demonstration of fundamental unfairness and deprivation of

judicial review, an individual must exhaust "any administrative remedies that may have been available to seek relief against the [removal] order." If the deportation order is successfully suppressed, it cannot be used to establish the element of prior deportation for the purposes of an 8 U.S.C. § 1326 prosecution.

## III.   ANALYSIS

Mr. Gonzalez Segundo collaterally attacks his April 1, 2002 removal order on the grounds outlined in *Mendoza-Lopez*, *Lopez-Vasquez*, and 8 U.S.C. § 1326(d). Specifically, Mr. Gonzalez Segundo claims that the expedited removal leading to his April 1, 2002 removal order was fundamentally unfair because: (a) it was based on an erroneous application of the law, and (b) he was not advised of his right to counsel and did not freely, knowingly and voluntarily waive his rights. The Court will examine each one of the requirements for a successful collateral attack on a prior removal order in turn below. The Court concludes that Mr. Gonzalez Segundo has met his burden under the relevant precedent and 8 U.S.C. § 1326(d) to suppress his April 1, 2002 removal order.

### A.  Administrative Exhaustion

In order to collaterally attack a deportation order, a noncitizen must show that he has "exhausted any administrative remedies that *may have been available* to seek relief against the order." 8 U.S.C. § 1326(d)(1) (emphasis added). The Fifth Circuit has held that an immigrant must simply raise an issue on appeal at the agency level to exhaust administrative remedies. *Goonsuwan v. Ashcroft*, 252 F.3d 383, 389 (5th Cir. 2001). An exception to the requirement of administrative exhaustion exists in cases where administrative remedies would be inadequate or futile. *Id.* Administrative exhaustion is futile when the agency "has no power to resolve [the challenge] in the applicant's favor." *Id.* (quoting *Sousa v. INS*, 226 F.3d 28, 32 (1st Cir. 2000)).

6

The Government argues that Mr. Gonzalez Segundo failed to exhaust his administrative remedies by electing to waive them. Mr. Gonzalez Segundo argues that he should be excused from the requirement of administrative exhaustion because of futility.[4]

The Court holds that Mr. Gonzalez Segundo was not required to exhaust his administrative remedies because doing so would have been futile. It is true that Mr. Gonzalez waived his right to rebut and contest the charges of removability. However, even if Mr. Gonzalez Segundo had chosen to rebut and contest the charge of being "deportable under section 237(a)(2)(A)(iii)" due to his conviction for an aggravated felony, neither an immigration judge nor the Board of Immigration Appeals ("BIA") would have had the power to find that Mr. Gonzalez was not an aggravated felon.[5]

Noncitizens who could not have obtained relief from the BIA under controlling circuit precedent have been excused from the requirement of administrative exhaustion of that issue. In *Arce-Vences v. Mukasey*, 512 F.3d 167, 172 (5th Cir. 2007), the Fifth Circuit held that a noncitizen's failure to present challenge to his classification as an aggravated felon to the BIA was not fatal to his subsequent petition for review to that court. Instead, the Fifth Circuit found that an appeal to the BIA of the aggravated felony classification would have been futile since, at the time of the appeal, the BIA was bound by Fifth Circuit precedent and did not possess the power or authority to decide differently. Though *Arce-Vences* involved a noncitizen challenging his removal order on direct review, the Fifth Circuit's reasoning as to futility of administrative exhaustion is equally applicable in the collateral review context. In *USA v. Hernandez-*

---

[4] Mr. Gonzalez Segundo makes an additional argument that he was foreclosed from administrative review due to the statutory provisions of INA § 235 that prevent review of expedited removal orders. However, Mr. Gonzalez Segundo was removed according to procedures outlined in INA § 238(b) (relating to expedited removal of aggravated felons) and not INA § 235 (relating to expedited removal of "arriving aliens").
[5] The jurisdiction of a federal Court of Appeals to grant Mr. Gonzalez Segundo relief from removal is immaterial since the relevant inquiry here is exhaustion of *administrative* review, not judicial review.

*Rodriguez*, 170 F. Supp. 2d 700, 703 (N.D. Tex. 2001), a court found that a noncitizen collaterally attacking his underlying deportation order was excused from administratively exhausting his claim because the BIA had "no power to alter the law" at the time an appeal would have been made. Similarly, in *USA v. Ojeda-Escobar*, 218 F. Supp. 2d 839, 844 (W.D. Tex. 2002), the court noted that the noncitizen's attempt to seek a waiver of removal under INA § 212(c) "would have been futile based on the state of the law at that time" and found that the administrative exhaustion requirement of 8 U.S.C. § 1326(d) had been met.

Similarly, at the time of Mr. Gonzalez Segundo's removal in 2002, his 2001 conviction for felony possession of a controlled substance was classified as an "aggravated felony" under the INA due to controlling Fifth Circuit and BIA precedent. In 1997, the Fifth Circuit held that a felony conviction for simple drug possession constituted an aggravated felony. *United States v. Hinojosa-Lopez*, 130 F.3d 691, 694 (5th Cir. 1997), *abrogated by Lopez v. Gonzalez*, 549 U.S. 47 (2006). The immigration judge is bound by the precedent of the Fifth Circuit when considering a noncitizen's claim for relief and the BIA is similarly bound when considering an appeal from an immigration judge's decision. *See Peters v. Ashcroft*, 383 F.3d 302, 306 n.2 (5th Cir. 2004); *Kalubi v. Ashcroft*, 364 F.3d 1134, 1141 (9th Cir. 2004) (quoting *Singh v. Ilchert*, 63 F.3d 1501, 1508 (9th Cir. 1995)) ("A federal agency is obligated to follow circuit precedent in cases originating within that circuit."). Not until 2006 did the Supreme Court reverse the Fifth Circuit and hold that a felony conviction for simple drug possession did not constitute an aggravated felony under federal immigration law. *See Lopez v. Gonzalez*, 549 U.S. 47 (2006). Therefore, at the time of Mr. Gonzalez Segundo's removal proceedings, neither an immigration judge nor the BIA would have had the power to entertain a challenge to Mr. Gonzalez Segundo's classification as an aggravated felon.

In addition to the futility exception, the administrative exhaustion requirement of 8 U.S.C. § 1326(d) cannot bar collateral review when the waiver of the right to an administrative appeal did not comport with due process. *See United States v. Sosa*, 387 F.3d 131, 136 (2d Cir. 2004); *United States v. Muro-Inclan*, 249 F.3d 1180, 1183 (9th Cir. 2001). As the Court finds and discusses *infra*, Mr. Gonzalez Segundo's waiver of his right to be represented by counsel, his right to rebut and contest his charges, and his right to petition for judicial review were not knowing, intelligent and voluntary. Therefore, Mr. Gonzalez Segundo is excused from administratively exhausting his claims of procedural error in the removal proceeding because his waiver was invalid.

Due to both the futility of raising a challenge to his classification as an aggravated felon with an immigration judge or the BIA and the invalid waiver of rights to administrative review, the Court holds that Mr. Gonzalez Segundo is excused from § 1326(d)'s requirement of administrative exhaustion.

## B. Fundamental Unfairness

A defendant collaterally attacking his underlying deportation order must demonstrate that the removal proceeding was fundamentally unfair, such that the error in the removal proceeding violated his Fifth Amendment right to due process in removal or deportation hearings. *See Lopez-Vasquez*, 227 F.3d at 483; *Patel v. INS*, 803 F.2d 804, 806 (5th Cir. 1986). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Due process requires that a noncitizen in removal proceedings be provided with notice of the charges against him, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard. *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597-98 (1953). A court reviewing the removal proceeding is limited to

9

determining whether the application of these procedures "meet[s] the essential standard of fairness under the Due Process Clause." *USA v. Benitez-Villafuerte*, 186 F.3d 651, 657 (5th Cir. 1999) (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)). If one of the elements deemed essential to due process is absent from the removal proceeding, then the defendant has been denied due process of the law. *Animashaun v. INS*, 990 F.2d 234, 238 (5th Cir. 1993). However, not all defects in a removal proceeding rise to the level of a violation of due process. Rather, "[f]undamental fairness is a question of procedure." *Lopez-Vasquez* at 484. Mr. Gonzalez Segundo's arguments can be consolidated into two issues, each of which will be addressed in turn below.

### 1. Erroneous Application of the Law

Mr. Gonzalez Segundo first attacks his expedited removal proceeding as fundamentally unfair because he was erroneously classified as an aggravated felon due to *Hinojosa-Lopez*, the prevailing Fifth Circuit precedent at the time of his expedited removal, and consequently, was deprived of his ability to ask for voluntary departure, a form of discretionary relief. The Government argues that, under *USA v. Calderon-Pena*, 339 F.3d 320 (5th Cir. 2003), Mr. Gonzalez Segundo is foreclosed from arguing that deprivation of the ability to seek a discretionary remedy renders his removal proceeding fundamentally unfair. Under this circuit's precedent, we must agree. Failure to be advised of eligibility for a discretionary remedy, even when it arises from an erroneous application of the law, does not rise to the level of fundamental unfairness. *See Calderon-Pena*, 339 F.3d at 324 (a noncitizen's misclassification as an aggravated felon, thereby rendering him ineligible for voluntary departure, did not constitute fundamental unfairness). In *Lopez-Ortiz*, the Fifth Circuit recognized that a remedy that is within the broad discretion of the Attorney General to grant is not a vested right protected by due

process. Therefore, even though the court acknowledged that the immigration judge's understanding of § 212(c) relief in *Lopez-Ortiz* was an erroneous interpretation of the law, it held that deprivation of the ability to be advised of or request a discretionary remedy did not constitute fundamental unfairness. *Lopez-Ortiz*, 313 F.3d at 225. Mr. Gonzalez Segundo's arguments to the contrary are unavailing.

### 2.  Lack of Notice of Right to Counsel and Failure to Obtain Valid Waiver

Mr. Gonzalez Segundo next attacks his expedited removal proceeding because he was not informed of his right to be represented by counsel and his waiver of the right to counsel was not free, knowing, or voluntary. Mr. Gonzalez Segundo essentially argues that these omissions constitute procedural errors that render the expedited removal fundamentally unfair.[6]

Noncitizens are entitled to procedural due process in their removal proceedings, and thus, the fundamental unfairness inquiry must examine the procedures used to deport the individual. *See USA v. Hernandez-Rodriguez*, 170 F. Supp. 2d 700, 703-04 (N.D. Tex 2001) (citing *Lopez-Vasquez*, 227 F.3d at 484). Procedural errors that may result in a fundamentally unfair proceeding include a failure to provide the noncitizen with notice of their right to appeal, the use of affidavits in removal proceedings from persons who are not available for cross-examination, and a failure to provide a noncitizen with notice of the time, date, or place of the deportation hearing. *See Mendoza-Lopez*, 481 U.S. at 783; *Olabanji v. INS*, 973 F.2d 1232, 1234 (5th Cir. 1992); *USA v. Montano-Bentancourt*, 151 F. Supp. 2d 794, 796 (W.D. Tex. 2001). In *Mendoza-Lopez*, the Supreme Court declined to enumerate all procedural errors that were grave enough to

---

[6] Mr. Gonzalez Segundo does not appear to argue that the expedited removal procedure itself does not comport with due process, as this argument is foreclosed by *Benitez-Villafuerte*. 186 F.3d at 660 (holding that the expedited removal procedure established by INA § 238 comports with minimal due process requirements). However, a noncitizen's right to due process may be violated if the government does not carry out the expedited removal proceeding properly. *Id.* at 658; *see also Lopez-Vasquez*, 227 F.3d at 485 (holding that, absent a showing that the procedures outlined by INA § 235(b) for expedited removal were not followed, the noncitizen was not denied procedural due process and his removal was not fundamentally unfair).

constitute a due process violation, but noted that, under some circumstances, abuses in administrative proceedings analogous to those in criminal proceedings, such as use of coerced confession, adjudication by a biased judge, mob violence, or knowing use of perjured testimony, could render the administrative proceedings fundamentally unfair. 481 U.S. at 839 n.17.

Here, the procedural errors identified are the failure to advise Mr. Gonzalez Segundo of his right to be represented by counsel, as a result both of the INS officer's omission of this information from the interview and the lack of a written Spanish translation of Form I-851, and Mr. Gonzalez Segundo's invalid waiver of his rights to counsel. Though noncitizens do not have a Sixth Amendment right to counsel, they do have a right to counsel under the Fifth Amendment if the absence of counsel would violate due process.[7] *See Goonsuwan*, 252 F.3d at 385 n.2; *United States v. Saucedo-Velasquez*, 843 F.2d 832, 835 n.2 (5th Cir. 1988). Though INA § 238(b) characterizes a noncitizen's ability to be represented by counsel as a "privilege" rather than a right, this statutory language must be interpreted in order to leave in place a constitutional right to counsel that is grounded in the Fifth Amendment. 8 U.S.C. § 1228(b)(4)(B); 8 U.S.C. § 1362; *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916) (describing the canon of constitutional avoidance as requiring a statute to be construed in order to avoid constitutional concerns). Additionally, individuals must be given a list of free legal services. 8 C.F.R. § 238.1(b)(2)(iv). The Fifth Circuit has recognized that deprivation of the right to counsel under the Fifth Amendment may amount to a denial of due process. *USA v. Campos-Asencio*, 822 F.2d 506, 510 (5th Cir. 1987); *see also USA v. Higareda-Ramirez*, 107 F. Supp. 2d 1248, 1255-56 (D. Hawaii 2000) (holding that the lack of interpretation and the failure to advise an individual of his

---

[7] In order for lack of representation to amount to a deprivation of due process, prejudice must be shown. *Prichard-Ciriza v. INS*, 978 F.2d 219, 222 (5th Cir. 1992). The Court will address the prejudice element in Part III.D *infra*.

right to be represented by counsel, combined with the absence of a record, rendered his removal proceeding fundamentally unfair).

The Fifth Circuit has held that a waiver of rights performed without "any understanding . . . of the complexity of [the noncitizen's] dilemma and without any awareness of the cogent legal arguments which could have been made on her behalf" was not "competently and understandingly made." *Partible v. INS*, 600 F.2d 1094, 1096 (5th Cir. 1979); *see also Mendoza-Mazariegos v. Mukasey,* 509 F.3d 1074, 1080 (9th Cir. 2007) (holding that any waiver of the right to counsel must be voluntary, knowing, and intelligent). "Failure to obtain such a waiver is an effective denial of the right to counsel" and amounts to a violation of due process if the resulting prejudice "is so great as to potentially affect the outcome of the proceedings." *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004). In determining whether a valid waiver of Fifth Amendment rights has been made, courts apply a "totality of the circumstances" test. *United States v. Saucedo-Velasquez*, 843 F.2d 832, 835 (5th Cir. 1988).

Noncitizens also must be provided with a written translation of the Form I-851, Notice of Intent, or the contents of the form must be explained in the noncitizen's native language or a language the noncitizen understands. 8 C.F.R. § 238.1(b)(2)(v). Courts have held that the "right of a person facing deportation to participate meaningfully in the deportation proceedings by having them competently translated into a language he or she can understand is fundamental." *Hartooni v. INS*, 21 F.3d 336, 340 (9th Cir. 1994) (citing *Tejeda-Mata v. Immigration and Naturalization Service*, 626 F.2d 721 (9th Cir. 1980)), *cert. denied* 456 U.S. 994 (1982)); *see also Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *Marincas v. Lewis*, 92 F.3d 195, 204 (3d Cir. 1996); *Nazarova v. INS*, 171 F.3d 478, 484 (7th Cir. 1999); *Augustin v. Sava*, 735 F.2d 32, 37 (2d Cir. 1984).

The Court finds that Mr. Gonzalez Segundo was not advised of his right to be represented by counsel, his rights to rebut and contest his charges, and his right to petition for judicial review. Under the totality of the circumstances, he did not make a knowing, voluntary and intelligent waiver of these rights. Mr. Gonzalez Segundo testified credibly that he was not advised of these rights in written form. He never received the first page of Form I-851, which states that an individual placed in removal proceedings may choose to be represented in removal proceedings. In addition, the first page of the form contains information about the process by which a noncitizen may rebut and contest his charges and may obtain judicial review of the expedited removal order. As to the second page of the form, Mr. Gonzalez Segundo testified credibly that the INS officer did not provide him with either an oral or written Spanish translation of it. The second page of Form I-851 states at the top of the page that the INS officer served the Form I-851 upon Mr. Gonzalez Segundo. Underneath the INS officer's signature appears the following text:

"☐ I explained and/or served this Notice of Intent to the alien in the Spanish  English  language.
Name of Interpreter _____
Location/Employer _____,"

(Def. Exh. 1 at 2.) However, the checkbox next to the first statement, as well as the name, location, and employer of the interpreter, was left blank. Only the words "Spanish" and "English" were circled. The Court believes that these markings buttress Mr. Gonzalez Segundo's testimony that no interpretation of Form I-851, including the text of the waiver, was provided to him and that the INS officer's interview took place in a mix of Spanish and English.

Next, Mr. Gonzalez Segundo testified credibly that he was not orally advised of his rights. The INS officer interviewing him prior to his April 1, 2002 removal order did not explain that he had a right to counsel, a right to challenge his classification as an aggravated felon, or the

14

right to obtain judicial review of his removal order. Mr. Gonzalez Segundo repeatedly stated that the immigration proceeding was explained by the INS officer as simply a way for him to leave as quickly as possible. Therefore, without either a written or oral notification of his rights, Mr. Gonzalez Segundo could not have known what he was waiving by signing the second page of Form I-851. Mr. Gonzalez Segundo was unaware of the nature of the complexity of his removal proceeding, and therefore, his waiver could not have been "competently and understandingly made." *Partible*, 600 F.2d at 1096.

In addition, the translation and interpretation deficiencies in the expedited removal process and the INS officer's interview prevented Mr. Gonzalez Segundo from participating meaningfully in his removal proceedings. The failure to obtain a proper translation of Form I-851 or of the explanation provided by the INS officer of the removal proceeding prejudiced Mr. Segundo in that he could not exercise his rights to rebut and contest the charges against him, to determine whether to be represented by counsel, and to seek judicial review.

The Court holds that these procedural errors render Mr. Gonzalez Segundo's expedited removal fundamentally unfair. Mr. Gonzalez Segundo's expedited removal could not have comported with due process when he was not apprised of his right to counsel, his waiver of rights to counsel and appeal were obtained unknowingly, and the removal proceeding took place in a language he did not understand. The facts presented here can be distinguished from cases in which the noncitizen was fully informed of his right to be represented by counsel at his own expense. *See, e.g.*, *United States v. Saucedo-Velasquez*, 843 F.2d 832, 835 (5th Cir. 1988); *United States v. Loaisiga*, 104 F.3d 484, 486 (1st Cir. 1997); *USA v. Garcia*, Case No. 02-10091-PBS, 2003 U.S. Dist. LEXIS 17056, *7 (D. Mass. Sept. 29, 2003). Similarly, Mr. Gonzalez Segundo has presented evidence that he was not informed of his ability to be represented by

15

counsel, unlike other cases where no such evidence existed. *See, e.g., USA v. Villa-Melchor*, 389 F. Supp. 2d 755 (W.D. Tex. 2005). Therefore, Mr. Gonzalez Segundo has met his burden in showing that his removal proceeding was fundamentally unfair.

## C. Elimination of Judicial Review

Next, Mr. Gonzalez Segundo must demonstrate that the procedural errors in his removal "effectively eliminate[d] the right . . . to challenge the hearing by means of judicial review . . . ." *Mendoza-Lopez*, 481 U.S. at 839. Here, the procedural errors consisted of the failure to explain to Mr. Segundo his right to be represented by counsel, his right to rebut and contest the charges against him, and his right to petition for judicial review of the removal order, in addition to the failure to translate this information into Spanish for him. These procedural errors in Mr. Gonzalez Segundo's hearing clearly prevented him from being aware of, much less pursuing, judicial review of both his classification as an aggravated felon and his placement in INA § 238(b) expedited removal as a result of this classification. These procedural errors "are so fundamental that they *functionally* deprive[d]" Mr. Gonzalez Segundo of judicial review. *Mendoza-Lopez*, 481 U.S. at 839 (emphasis added); *see also Higareda-Ramirez*, 107 F. Supp. 2d at 1255-56 (holding that the lack of counsel, lack of interpretation and lack of record of the deportation hearing "foreclosed all avenues of relief"). Thus, the Court finds that Mr. Gonzalez Segundo has satisfied this element of his collateral attack upon his removal order.

## D. Actual Prejudice

The final requirement of a successful collateral attack is actual prejudice to the noncitizen. To meet this prong, a noncitizen must show "a reasonable likelihood that, but for the errors complained of, he would not have been deported." *USA v. Calderon-Pena*, 339 F.3d 320, 324 (5th Cir. 2003); *see also USA v. Encarnacion-Galvez*, 964 F.2d 402, 407 (5th Cir. 1992). In

other words, "if the defendant was legally deportable and, despite the INS's errors, the proceeding could not have yielded a different result, the deportation is valid for purposes of section 1326." *Lopez-Vasquez*, 227 F.3d at 485 (quoting *Benitez-Villafuerte*, 186 F.3d at 658-59). Mr. Gonzalez Segundo contends that he suffered actual prejudice because he would have likely received voluntary departure instead of an order of removal if he had been able to challenge his classification as an aggravated felon with the assistance of an attorney.

Voluntary departure is a form of relief, within the discretion of the Attorney General, that allows a noncitizen to depart the United States in lieu of being deported. 8 U.S.C. § 1229c. A noncitizen may be granted voluntary departure prior to the initiation or completion of removal proceedings under INA § 240, *see* 8 U.S.C. § 1229c(a), or at the conclusion of removal proceedings. *See* 8 U.S.C. § 1229c(b). A noncitizen who has been convicted of an aggravated felony is not eligible for voluntary departure either pre- or post-conclusion of removal proceedings. *Id*. §§ 1229c(a), (b); *see also* 8 U.S.C. § 1228(b)(5) (stating that noncitizens in INA § 238(b) removal proceedings are ineligible for discretionary relief).

Here, Mr. Gonzalez Segundo would have been eligible for pre-conclusion voluntary departure, pursuant to 8 U.S.C. § 1229c(a), had he not been incorrectly categorized as an aggravated felon. With a competent attorney, Mr. Gonzalez Segundo would have been able to challenge this misclassification and request voluntary departure.[8] A denial of right to counsel is prejudicial when the actions of a competent attorney would have exposed pertinent information. *See Castro-O'Ryan v. U.S. Dep't of Immigration and Naturalization*, 847 F.2d 1307, 1313 (9th Cir. 1987) (holding that a unintelligent and involuntary waiver of counsel was prejudicial when

---

[8] Though Mr. Gonzalez-Segundo would have been able to obtain relief from the BIA at the time of his challenge, due to the Fifth Circuit precedent in *Hinojosa-Lopez*, with the assistance of a lawyer, he would have been able to petition for judicial review to the Fifth Circuit. *See Arce-Vences*, 512 F.3d at 172 (stating that, though the BIA could not have found that simple drug possession was not an aggravated felony at the time of its review, the petitioner could raise this "purely legal issue" through judicial review).

an attorney would have been able to distinguish between the effect of a criminal conviction upon

a noncitizen's eligibility for withholding of removal and eligibility for asylum). The procedural

errors in his expedited removal prevented Mr. Gonzalez Segundo from obtaining counsel in

order to challenge the determination that he was an aggravated felon.

Had Mr. Gonzalez Segundo been able to request voluntary departure, there is a

reasonable probability he would have been granted it. A noncitizen that requests pre-conclusion

voluntary departure "need not show that he has good moral character or that he has the financial

means to depart the United States." *Matter of Arguelles-Campos*, 22 I. & N. Dec. 811, 818 (BIA

1999). Rather, the decision to grant voluntary departure rests in the discretion of the Attorney

General. The factors used to determine whether discretion should be exercised include:

> nature and underlying circumstances of the deportation ground at issue; additional
> violations of the immigration laws; the existence, seriousness, and recency of any
> criminal record; and other evidence of bad character or the undesirability of the
> applicant as a permanent resident. . . . discretion may be favorably exercised in
> the face of adverse factors where there are compensating elements such as long
> residence here, close family ties in the United States, or humanitarian needs.

*Id.* Mr. Gonzalez Segundo's approximately thirty-four years of residence in McAllen at the time

of his removal proceedings in 2002 clearly would have been a strong factor in favor of voluntary

departure. In addition, his five U.S. citizen children and ties to other relatives in the United States

may have been considered as favorable factors. Mr. Gonzalez Segundo's criminal history would

have been considered a factor warranting against a grant of voluntary departure. However,

almost all of Mr. Gonzalez Segundo's prior arrests and convictions resulted in no prosecution or

in probationary sentences without a term of imprisonment. A defendant does not have to

demonstrate "with absolute certainty" that he would have been granted discretionary relief, but

only "a reasonable likelihood" that he would have obtained it. *USA v. Mendoza-Mata*, 322 F.3d

829, 834 (5th Cir. 2003). Mr. Gonzalez Segundo has demonstrated a reasonable likelihood that

he would have been granted pre-conclusion voluntary departure if he had been allowed to request it.

The Court finds that Mr. Gonzalez Segundo has shown that there is a reasonable probability that he would have been able to challenge his classification as an aggravated felony and receive voluntary departure, thereby avoiding deportation, had he been informed of his right to be represented by counsel, his right to rebut and contest the charges, and his right to petition for judicial review. Therefore, he has met the "actual prejudice" requirement of a collateral attack under 8 U.S.C. § 1326(d).

## IV.   REINSTATEMENT OF PRIOR REMOVAL ORDER

Mr. Gonzalez Segundo also argues that the reinstatement order issued on May 13, 2003, reinstating the April 1, 2002 removal order, is invalid because it is based on an underlying removal that did not comport with due process.

As an initial matter, it is unclear from the indictment whether Mr. Gonzalez Segundo's April 1, 2002 removal order and/or his May 13, 2003 reinstatement order serves as the underlying element of the indictment for illegal reentry under 8 U.S.C. § 1326. If his indictment is based only upon his April 1, 2002 removal order, then the indictment must be dismissed because Mr. Gonzalez Segundo has brought a successful collateral attack upon this order.

However, if Mr. Gonzales Segundo's May 13, 2003 reinstatement order serves as an underlying element of the § 1326 offense, the Court must examine whether the reinstatement order is valid. A reinstatement order is not literally an "order of removal," but merely reinstates a previously issued order of removal or deportation. 8 U.S.C. § 1231(a)(5); *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 295 (5th Cir. 2002). Courts possess the authority to judicially review reinstatement orders. 8 U.S.C. § 1252(a)(2)(D); *Ojeda-Terrazas*, 290 F.3d at 295; *Ramirez-*

*Molina v. Ziglar*, 436 F.3d 508 (5th Cir. 2006). "[R]einstatement orders do not exist independent and separate from their prior orders of removal but are instead explicitly premised on the prior order." *United States v. Charleswell*, 456 F.3d 347, 352 (3d Cir. 2006). "[I]nsofar as the underlying element of the § 1326 proceeding is the reinstatement order, [a noncitizen] may attempt to collaterally challenge both the original deportation order and the reinstatement order." *Id.* If either the reinstatement order or the original removal order is the product of a proceeding that does not comport with due process, a court may invalidate the criminal charges arising from these orders. *Id.* Although at least one circuit has held that a reinstatement order is not unconstitutional when the underlying removal proceeding violated due process, it did not address the situation presented here—where the reinstatement is used as the basis for a subsequent criminal proceeding. *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 497-98 (9th Cir. 2007) ("Reinstatement of a prior removal order—regardless of the process afforded in the underlying order—does not offend due process because the reinstatement of a prior order does not change the [noncitizen's] rights or remedies."); *see also USA v. Gomez-Hernandez*, Case No. CR-08-6005-FVS, 2008 U.S. Dist. LEXIS 90631, *14-*15 (E.D. Wa. May 16, 2008). Allowing a reinstatement order to serve as the underlying element of a § 1326 criminal charge, even when errors in the original removal proceeding eliminated the right of the noncitizen to obtain judicial review, would permit the government to circumvent the Supreme Court's holding in *Mendoza-Lopez* that a noncitizen must be allowed to collaterally attack a removal proceeding that does not comport with due process. *Mendoza-Lopez*, 481 U.S. at 839.

Mr. Gonzalez Segundo's May 13, 2003 reinstatement order was based upon his April 1, 2002 removal order. He has successfully shown that the April 1, 2002 removal order was the result of a proceeding that violated his rights to procedural due process and eliminated his rights

to judicial review. The reinstatement proceeding in May 2003 did not permit Mr. Gonzalez Segundo the opportunity to obtain any review, administrative or judicial, of the underlying deportation order. 8 U.S.C. § 1231(a)(5); *Ojeda-Terrazas*, 290 F.3d at 295. Therefore, neither the April 1, 2002 removal order nor the May 13, 2003 reinstatement order premised upon it may be used to establish the element of prior deportation or removal from the United States for a § 1326 criminal offense.

## V.     CONCLUSION

Defendant's motion to suppress prior deportations and motion to dismiss indictment (Doc. No. 15) is **GRANTED.** The charge set forth in the Indictment (Doc. No. 1) is **DISMISSED.**

**IT IS SO ORDERED**.

**SIGNED** this _16_ day of November, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE